## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SULLIVAN WALTER,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO.  23-4352** |
| **CITY OF NEW ORLEANS, ET AL.,**<br>    **Defendant** | **SECTION: "E" (2)** |

## ORDER AND REASONS

Before the Court are Defendants, Anne Kirkpatrick ("Kirkpatrick"), in her official capacity as Superintendent of the New Orleans Police Department ("NOPD"), the City of New Orleans ("the City"), and Harry O'Neal (O'Neal") (Kirkpatrick, the City and O'Neal sometimes collectively referred to as "the City Defendants").[1] The City Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] Plaintiff, Sullivan Walter, opposes the motion.[3] The City Defendants filed a reply.[4] Plaintiff also filed two notices of supplemental authority.[5]

## BACKGROUND

### I.    Factual Background

This case arises out of the wrongful conviction and incarceration of Plaintiff, Sullivan Walter.[6] On May 10, 1986, L.S. was sexually assaulted in her home.[7] Immediately after the assault, L.S. called the police and was taken to the hospital, where a resident

---

[1] The NOPD is not a defendant in this action. NOPD "is not recognized as a legal entity or person capable of being sued." *Littlejohn v. New Orleans City*, 493 F. Supp. 3d 509 (E.D. La. 2020) (quoting *Thomas v. City of New Orleans*, 883 F. Supp. 2d 669, 691 (E.D. La. 2012)). Any references to the NOPD in the parties' briefing are in effect references to the City.

[2] R. Doc. 90; FED. R. CIV. P. 12(b)(6).

[3] R. Doc. 93.

[4] R. Doc. 94.

[5] R. Doc. 95; R. Doc. 97.

[6] R. Doc. 85.

[7] *Id.* at p. 9.

physician performed an examination and preserved the evidence in rape kit collecting several swabs.[8] That night, L.S. also provided a description of the perpetrator to the police.[9] She described the perpetrator as a Black man who was "5'11, slender, 18-20 years old, with thick eyebrows, jerri curl ringlets, [and was] wearing a backwards baseball hat."[10] L.S. stated that the man's baseball hat was blue, and he wore a face covering during the assault.[11] A sketch artist prepared a composite drawing of the perpetrator.[12]

The Orleans Parish Coroner's Office performed serological testing on the vaginal swabs recovered from L.S.[13] Plaintiff alleges that serological testing "is used to determine whether a person's body secretes ABO blood group antigens into their bodily fluids, such as saliva, sweat, and semen."[14] Persons who secrete blood group antigens are known as "secretors," while those who do not are referred to as "non-secretors."[15] The testing revealed that the seminal fluid came from a perpetrator who was a non-secretor.[16] Separately, Harry O'Neal ("O'Neal"), a criminalist in the New Orleans Police Crime Lab at the time,[17] serologically tested a semen sample retrieved from L.S.'s shorts.[18] This testing also revealed that the perpetrator was a non-secretor.[19]

On June 23, 1986, Plaintiff—who was seventeen, of an average build, had cropped

---

[8] *Id.* at p. 10.
[9] *Id.*
[10] *Id.* at p. 10.
[11] *Id.* at pp. 9. L.S. stated that the face covering dropped several times during the assault, which made her believe she could identify him.
[12] *Id.* at p. 11.
[13] *Id.*
[14] *Id.* at p. 10.
[15] *Id.* Serological testing of bodily fluids from secretors reveals the blood type of the person who was the source of the fluid. When someone is a non-secretor, their blood type is not determinable from their bodily fluids. Plaintiff asserts that this distinction "allows laboratories to investigate evidentiary bodily fluids other than blood to eliminate persons of interest as the source." *Id.* at pp. 10-11.
[16] *Id.* at p. 11.
[17] *Id.* at p. 8.
[18] *Id.* at p. 11.
[19] *Id.*

natural hair, sparse eyebrows, and was without facial hair at the time—was arrested for an unrelated simple burglary.[20] Plaintiff was wearing a blue hat when he was arrested.[21] The police identified him as a potential match to the composite drawing.[22] On June 26, 1986, the police presented L.S. with a photo lineup of seven individual photographs, one of which was a photo of Plaintiff wearing a blue hat.[23] Plaintiff alleges he was the only man in the photos who was wearing a hat.[24] Plaintiff alleges "L.S. made a cross-racial identification and incorrectly identified Mr. Walter as the perpetrator."[25]

On November 13, 1986, Plaintiff was charged with two counts of aggravated crimes against nature, one count of aggravated rape, and one count of aggravated burglary.[26] On December 1, 1986, he was arraigned and pleaded not guilty.[27]

Plaintiff alleges that, while they were preparing his defense, he and his counsel were unaware of the serological testing that had been performed.[28] Plaintiff alleges that "neither [he] nor his attorney received the lab report before the morning of trial. As a result, this evidence was unusable at trial, and Mr. Walter was deprived of an opportunity to obtain and present any evidence regarding his own secretor status or the implication of his secretor status."[29]

At the trial, L.S. testified and identified Plaintiff as the perpetrator.[30] Detective

---

[20] *Id.*
[21] *Id.*
[22] *See id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.* at p. 12.
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.* Plaintiff alleges L.S.'s testimony contradicted the prior statement she gave to police because she testified that the perpetrator did not have much hair, while her prior statement described the perpetrator as having thick eyebrows, curly hair, and stubble.

O'Neal testified that the serological testing of the seminal fluid revealed that the perpetrator was a non-secretor but did not explain the significance of this finding:

> "In this particular case, examination of seminal fluid revealed no secretor activity which would indicate that the individual who left seminal fluid stains was a non-secretor. In other words, they did not secrete their blood type.[31]

Plaintiff alleges that O'Neal confirmed the perpetrator was a non-secretor during his cross-examination.[32] Following the three-hour trial, a twelve-member jury found Plaintiff guilty on all counts.[33] Plaintiff was sentenced to thirty-five years in prison.[34]

Plaintiff appealed his conviction, arguing that OPDA violated his constitutional due process rights and violated its discovery duties because it withheld the serological testing reports until the day of trial.[35] In October 1987, the Louisiana Fourth Circuit Court of Appeal, finding OPDA violated its discovery duties, remanded the case to the trial court to allow for Plaintiff to present his *Brady*[36] claims.[37] On January 13, 1988, serological testing was ordered, which revealed that Plaintiff was a secretor and secreted Blood Type B antigens.[38] Plaintiff alleges that this testing confirmed that Plaintiff could not have been the perpetrator of the crimes against L.S.[39]

Plaintiff moved for a new trial.[40] On April 29, 1988, the criminal district court held an evidentiary hearing on Plaintiff's motion for a new trial.[41] Plaintiff alleges that the

---

[31] *Id.*
[32] *Id.* at p. 13.
[33] *Id.* at p. 12.
[34] *Id.* at p. 13.
[35] *Id.*
[36] *Brady v. Maryland*, 373 U.S. 83 (1963).
[37] R. Doc. 85, p. 13.
[38] *Id.*
[39] *Id.* at p. 14.
[40] *Id.*
[41] *Id.*

prosecution's only witness at the hearing was O'Neal.[42] Plaintiff alleges that

> prior to . . . [O'Neal's] testimony, one or more agents of the OPDA directed Defendant O'Neal to lie about the secretor status testing and significance. In the OPDA's words, the OPDA "asked its criminalist [O'Neal] to come in and 'fudge'" his testimony. "And that's what he did."[43]

In the alternative, Plaintiff alleges that Detective O'Neal intentionally falsified his testimony on his own and concealed the fact that he gave false testimony from OPDA.[44]

At the hearing, Detective O'Neal testified that the serological testing did not necessarily exclude Mr. Walter as a potential perpetrator.[45] Detective O'Neal also testified that the serological testing of the rape kit swabs did not conclusively establish whether the perpetrator was a secretor.[46] Plaintiff alleges that this testimony was false and directly contradicted Detective O'Neal's testimony at the first trial.[47]

Plaintiff alleges that O'Neal's testimony was the "sole basis for the criminal district court to deny [Plaintiff's] motion for a new trial," as no other witness testified at the hearing.[48] Plaintiff appealed, and the Fourth Circuit Court of Appeal affirmed the denial of the motion for a new trial.[49]

In October 2021, the Innocence Project New Orleans ("IPNO") took on Plaintiff's case.[50] IPNO contacted the Civil Rights Division of OPDA, which began conducting its own investigation into Plaintiff's case.[51] On August 23, 2022, OPDA and IPNO attorneys

---

[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.* at p. 14.
[46] *Id.*
[47] *Id.*
[48] *Id.* at p. 15.
[49] *Id.* Plaintiff alleges the Fourth Circuit applied the incorrect legal standard to evaluate whether the newly discovered evidence would have changed the result of the trial. The Louisiana Supreme Court granted Mr. Walter's writ and remanded for the Fourth Circuit to apply the correct standard. The Fourth Circuit again affirmed Mr. Walter's conviction. *Id.* at p. 15.
[50] *Id.*
[51] *Id.*

filed a "Joint Agreement and Motion to Vacate" Plaintiff's conviction.[52] At the motion hearing on August 25, 2022, OPDA "stated that 'the serology evidence' disclosed on the morning of Mr. Walter's trial 'show[ed] that' Mr. Walter 'did not commit the crime.'"[53] After the hearing, a criminal district court judge vacated Plaintiff's conviction and ordered his release from prison.[54]

Plaintiff filed the instant civil lawsuit, seeking to recover compensatory damages, punitive damages, and an award of costs and attorneys' fees for violations of his civil rights under 42 U.S.C. §§ 1983 and 1988, the Fifth and Fourteenth Amendments of the United States Constitution, the Louisiana Constitution, and other Louisiana state law.[55] Plaintiff seeks to hold OPDA, the City, O'Neal, and other unnamed agents of the OPDA/the City/NOPD liable for violations of his civil rights, which resulted in his wrongful incarceration for over 35 years.[56] Plaintiff alleges that Defendants violated his Fifth and Fourteenth Amendment rights by "fabricating evidence; suppressing exculpatory evidence; suborning and committing perjury; and creating and maintaining unlawful policies, customs, and practices that caused the wrongful and unconstitutional acts . . . ."[57]

Plaintiff brings § 1983 individual capacity claims against both O'Neal and "John/Jane Does #1-20," employees of the NOPD or OPDA acting under the color of state law, alleging the following violations: (1) deprivation of liberty without due process of law, in violation of the Fifth and Fourteenth Amendments; (2) violations of due process that

---

[52] *Id.*
[53] *Id.* at p. 16.
[54] *Id.*
[55] *See generally* R. Doc. 85.
[56] R. Doc. 85, p. 3.
[57] *Id.* at p. 3.

shock the conscience, in violation of the Fourteenth Amendment; and (3) a civil rights conspiracy claim.[58] Plaintiff brings a "failure to intervene" claim solely as to John/Jane Does #1-20.[59] Plaintiff alleges the individual Defendants, acting individually, jointly, and/or in conspiracy, improperly suppressed and failed to timely disclose material exculpatory evidence, fabricated evidence, and engaged in the affirmative concealment of such misconduct, thereby depriving Mr. Walter of his right not to be deprived of liberty without due process of law."[60] Plaintiff also asserts state law claims against the individual Defendants: claims for malicious prosecution, wrongful conviction and wrongful imprisonment, negligence and/or gross negligence, intentional and/or reckless infliction of emotional distress, and violations of the Louisiana State Constitution.[61]

Plaintiff brings an official capacity claim under *Monell v. Department of Social Services*[62] against the City, through OPDA and NOPD. Plaintiff alleges that

> [b]oth the NOPD and the OPDA maintained unlawful policies, customs, and practices during Mr. Walter's investigation, arrest, and trial. In executing these unlawful policies, customs, and practices, the NOPD and OPDA violated the constitutional rights of criminal suspects and defendants, including Mr. Walter. In Mr. Walter's case, these unlawful policies, customs, and practices enabled Defendant O'Neal and other members, servants, employees, and agents of the City, NOPD, and OPDA to violate Mr. Walter's constitutional rights. The policymaking officials acting on behalf of the City, NOPD, and OPDA were deliberately indifferent to the likelihood that their agencies' unlawful policies, customs, and practices would cause constitutional violations like Mr. Walter's. As a result, the City and Defendants Williams and Kirkpatrick, sued in their official capacities, caused and are liable for Mr. Walter's injuries.[63]

---

[58] *Id.* at pp. 8, 51-55.
[59] *Id.* at p. 54.
[60] *Id.* at p. 52.
[61] *Id.* at pp. 58-62.
[62] 436 U.S. 658 (1978).
[63] R. Doc. 85, pp. 5-6.

## II.    Procedural History

The City Defendants filed their first motion to dismiss on November 12, 2024.[64] The Court granted Plaintiff leave to amend his complaint a third time in response to the arguments raised in the City Defendants' first motion to dismiss.[65] Plaintiff filed a third amended complaint and attached the expert report prepared by Professor Laurie L. Levenson, which discusses OPDA's policies, customs, and practices and whether they complied with *Brady*.[66] As a result, the Court denied the first motion to dismiss without prejudice.[67] The City Defendants filed their second motion to dismiss on January 27, 2025.[68]

The City Defendants argue that Plaintiff's claims against O'Neal in his individual capacity should be dismissed.[69] Defendants invoke the defense of qualified immunity and argue that Plaintiff fails to demonstrate that O'Neal violated Plaintiff's constitutional rights.[70] The City Defendants further argue that, to the extent Plaintiff's claims against O'Neal are predicated solely on O'Neal's testimony, these claims are barred by absolute immunity.[71] Finally, Defendants argue that Plaintiff has failed to adequately plead the requisite elements of his *Monell* claim against the City and Anne Kirkpatrick, in her official capacity as NOPD Superintendent.[72] Defendants argue that Plaintiff fails to allege facts demonstrating the City had a custom or policy, particularly as to facilitating perjury,

---

[64] R. Doc. 73.
[65] R. Doc. 78. The Court previously denied without prejudice two motions to dismiss filed by Jason Williams, on behalf of OPDA. *See* R. Docs. 37, 68.
[66] R. Doc. 85.
[67] R. Doc. 86.
[68] R. Doc. 90.
[69] In a footnote, Defendants argue that the Court should dismiss Plaintiff's state law claims against O'Neal because Plaintiff 'repeats and realleges' the facts he has plead in support of [his] federal claims." R. Doc. 90-1, p. 17.
[70] *Id.* at pp. 8-15.
[71] *Id.* at pp. 15-17.
[72] *Id.* at pp. 17-18.

resulting in a violation of Plaintiff's rights under *Monell* to demonstrate Defendants' deliberate indifference.[73] Defendants further argue Plaintiff has failed to plead facts in support of his failure to train, supervise, and discipline claims.[74]

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[75] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[76] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[77] The Court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[78] Indeed, "threadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[79]

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]'—that the pleader is entitled to relief."[80] However, "legal conclusions can provide the framework

---

[73] *Id.* at pp. 20-25.

[74] *Id.* at p. 24.

[75] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

[76] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

[77] *Id.*

[78] *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).

[79] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).

[80] *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

of a complaint, [if] they [are] supported by factual allegations."[81] "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[82] "Although detailed factual allegations are not required," "[d]ismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[83] Whether a plaintiff "will be able to offer sufficient proof to support [his or her] claims is more appropriate in the context of a motion for summary judgment or a trial on the merits" rather than in a motion to dismiss.[84] "[I]ntensive disputes of material fact . . . are usually more appropriate for summary judgment . . . ."[85]

For plaintiffs alleging municipal liability claims, the complaint's "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts."[86] In the Fifth Circuit, "courts should not 'grant motions to dismiss for failing to plead [a] specific identity [of the policymaker].' Rather, 'the complaint need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable.'"[87] To sufficiently allege a widespread practice under a failure to train or discipline claim, "to survive dismissal, plaintiffs must cite sufficiently numerous prior incidents, each of which includes specific facts that are sufficiently similar to those alleged . . . ."[88]

---

[81] *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

[82] *Iqbal*, 556 U.S. at 679.

[83] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (citations omitted).

[84] *Smith v. GE Healthcare, Inc.*, No. 3:19-CV-00492, 2019 WL 4565246, at *7 (W.D. La. Sept. 4, 2019).

[85] *Dong Phuong Bakery, Inc. v. Gemini Soc'y, LLC*, No. CV 21-1109, 2022 WL 898750, at *5 (E.D. La. Mar. 28, 2022).

[86] *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018).

[87] *Id.* at 622-23 (citing *Groden v. City of Dallas*, 826 F.3d 280, 284, 286 (5th Cir. 2016)).

[88] *Verastique v. City of Dallas*, 106 F.4th 427, 432 (5th Cir. 2024).

## LAW AND ANALYSIS

**I.    Plaintiff's claims against the unidentified Defendants will be dismissed.**

Plaintiff asserts a "failure to intervene" claim against "John/Jane Does #1-20" in his third amended complaint.[89] Defendants argue in their motion to dismiss that Plaintiff's third amended complaint "purportedly asserts claims against twenty-one defendants in their individual capacities, but he names only one: NOPD Criminalist Harry O'Neal."[90] Defendants argue that Plaintiff fails to make any specific factual allegations as to how these unnamed Defendants violated Plaintiff's civil rights.[91] Defendants argue Plaintiff has failed to plead facts demonstrating that any person "failed to intervene" while Plaintiff's constitutional rights were violated.[92] Defendants further argue Plaintiff alleges facts which are specific only to O'Neal.[93] Plaintiff does not address Defendants' arguments as to the unnamed John/Jane Does in opposition to the motion to dismiss.[94] At the status conference in this matter, counsel for Plaintiff represented to the Court that no other law enforcement officers had been identified. As a result, the Court will dismiss Count Three of Plaintiff's complaint as to the John/Jane Doe Defendants without prejudice.[95] The Court also will dismiss any other individual capacity claim against unnamed Defendants, to the extent they are stated in the third amended complaint.

---

[89] R. Doc. 85, p. 54.
[90] R. Doc. 90-1, p. 9.
[91] *Id.*
[92] *Id.* at pp. 12-13.
[93] R. Doc. 90-1, p. 9.
[94] *See generally* R. Doc. 93.
[95] *See Phillips v. Whittington*, 497 F. Supp. 3d 122, 149 (W.D. La. 2020) (dismissing failure to intervene claim after plaintiff conceded dismissal).

## II.   O'Neal is absolutely immune from suit for any claim related to his testimony and/or his pretrial conspiracy to commit perjury.

"Witnesses are entitled to absolute immunity against § 1983 suits based on their testimony in a criminal trial."[96] "[A] police officer is entitled to absolute immunity when testifying as a witness in a criminal legal proceeding."[97] The Fifth Circuit has further held that absolute witness immunity extends to "pre-trial conspiracy to commit perjury" because "allowing such conspiracy suits would permit most § 1983 perjury suits to be restyled as § 1983 claims for conspiracy to commit perjury, [as] 'a witness rarely prepares her testimony on her own.'"[98]

In Count One of his third amended complaint, Plaintiff alleges that, while acting individually, jointly, and/or in conspiracy, "Defendants caused Defendant O'Neal to commit perjury and falsely testify that the serological testing of the fluids recovered from the victim did not conclusively establish whether the perpetrator is a secretor" in violation of Plaintiff's Fifth and Fourteenth Amendment rights.[99] Plaintiff alleges either "one or more agents of the OPDA directed Defendant O'Neal to lie about the secretor status testing and significance" at the hearing, or, in the alternative, O'Neal independently decided to falsify his testimony "to say that the lab results did not necessarily exclude Mr. Walter."[100] Plaintiff alleges "O'Neal's false testimony at the hearing provided the sole basis for the Criminal District Court to deny Mr. Walter's motion for new trial."[101] In Count Four of his third amended complaint, Plaintiff asserts a civil rights conspiracy claim

---

[96] *Mowbray v. Cameron Cnty.*, 274 F.3d 269, 277 (5th Cir. 2001) (quoting *Briscoe v. LaHue*, 460 U.S. 325, 329–31 (1983)); *Castellano v. Fragozo*, 352 F.3d 939, 958 (5th Cir. 2003) (It is a "well-established rule that prosecutors and witnesses, including police officers, have absolute immunity for their testimony at trial.").
[97] *Wearry v. Foster*, 33 F.4th 260, 272 (5th Cir. 2022) (citing *Briscoe*, 460 U.S. at 345-46) ("[I]n that situation, he is not acting as a police officer, but rather as 'any other witness sworn to tell the truth.'").
[98] *Id.* (citing *Franklin v. Terr*, 201 F.3d 1098, 1101–03 (9th Cir. 2000)).
[99] R. Doc. 85, pp. 51-52.
[100] *Id.* at pp. 14-15.
[101] *Id.* at p. 15.

against individual Defendants, including O'Neal, for "acting in concert to fabricate evidence, including but not limited to false witness statements; and acting in concert to affirmatively conceal such misconduct."[102]

To the extent Plaintiff asserts claims against O'Neal in his individual capacity based on his alleged perjury and/or any conspiracy with others to commit perjury and testify falsely, O'Neal is entitled to absolute immunity from suit.[103] These claims will be dismissed with prejudice.

### III. The Court will permit discovery as to Plaintiff's Fourteenth Amendment due process claims against O'Neal in his individual capacity.

Defendants raise the defense of qualified immunity as to Plaintiff's remaining claims against O'Neal in his individual capacity.[104] Defendants argue Plaintiff has failed to establish that O'Neal's actions deprived Plaintiff of any constitutional right.[105]

"Qualified immunity is a defense available to government officials in their individual capacities under 42 U.S.C. § 1983."[106] "Qualified immunity is an 'immunity from suit rather than a mere defense to liability.'"[107] "Qualified immunity protects 'government officials performing discretionary functions' from liability for civil damages so long as their 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[108]

---

[102] *Id.* at p. 55.
[103] *See supra* note 95. *See, e.g.*, *Coleman v. Smith*, No. 2:16-CV-60-KS-MTP, 2016 WL 6242818 (S.D. Miss. Sept. 26, 2016), *report and recommendation adopted*, No. 2:16-CV-60-KS-MTP, 2016 WL 6238601 (S.D. Miss. Oct. 25, 2016).
[104] R. Doc. 90-1, pp. 8-9.
[105] *Id.* at p. 10.
[106] *Livingston v. Ward*, 4:20-CV-00474-SDJ-CAN, 2021 WL 3480007, at *5 (E.D. Tex. June 4, 2021).
[107] *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 237 (2009)).
[108] *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

"[A] defendant's entitlement to qualified immunity must be determined 'at the earliest possible stage of the litigation.'"[109] "In *Saucier v. Katz*, the Supreme Court set forth a two-part framework for analyzing whether a defendant was entitled to qualified immunity."[110] *Saucier* instructs that the Court conduct the inquiry as follows:

> First, the Court asks "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Second, the Court considers whether the allegedly violated right is "clearly established" in that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." The Court does not have to address these questions sequentially; it can proceed with either inquiry first.[111]

"Once a defendant invokes the defense of qualified immunity, the plaintiff carries the burden of demonstrating its inapplicability."[112] "In the context of a motion to dismiss, 'a district court must first find 'that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.'"[113] "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[114] "If the defendant's conduct did not violate a plaintiff's constitutional rights under the first prong, or his conduct was objectively reasonable under the second prong, he is entitled to qualified immunity."[115] Mere "conclusory allegations will not suffice to prevent dismissal for failure to state a claim."[116]

---

[109] *Carswell v. Camp*, 54 F.4th 307, 310 (5th Cir. 2022).
[110] *Woodall*, 78 F. App'x at 954 (citing 535 U.S. 194 (2001)).
[111] *Id.* (quoting *Saucier*, 535 U.S. at 201-02) (internal citations omitted).
[112] *Id.*
[113] *Id.* at *15 (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)).
[114] *Id.* (quoting *Backe*, 691 F.3d at 648).
[115] *Blackwell v. Laque*, 275 F. App'x 363, 366 (5th Cir. 2008).
[116] *Penley v. Sandoval*, No. Civ.A. 4:04CV24, 2005 WL 3970822, at *6 (E.D. Tex. Mar. 8, 2005).

"After the district court finds a plaintiff has so pled, if the court remains 'unable to rule on the immunity defense without further clarification of the facts,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'"[117] The "purpose is *only* to allow the district court to rule on the defendant's assertion of QI; its purpose is *not* to provide a backdoor for plaintiffs to circumvent the defendant's immunity from suit."[118] "[W]here the QI-asserting official determines that any pre-ruling discovery sought or ordered in the district court crosses the line from permissible *Lion Boulous* discovery to impermissible vitiation of the official's immunity from suit, the collateral order doctrine authorizes an immediate appeal . . . ."[119]

As stated above, the Court will dismiss all individual capacity claims against O'Neal based on allegations that he testified falsely at the hearing or acted in conspiracy with others to do so based on absolute witness immunity. The Court will consider only Plaintiff's remaining claims that O'Neal violated Plaintiff's Fourteenth Amendment due process rights by suppressing, concealing, or withholding exculpatory evidence.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[120] To prevail on a *Brady* claim, the party must show "(1) the [actor] suppressed evidence; (2) the evidence is favorable to the defense; and (3) the evidence is material to guilt or

---

[117] *Backe*, 691 F.3d at 648; *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014); *Lion Boulos v. Wilson*, 834 F.2d 504, 508–09 (5th Cir. 1987).
[118] *Carswell*, 54 F.4th at 311.
[119] *Id.* (citing *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) (per curiam)).
[120] *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

punishment."[121] In the Fifth Circuit, "when the claim is untimely disclosure of *Brady* material, [courts] have looked 'to whether [the defendant] was prejudiced by the tardy disclosure,'" and "a defendant is not prejudiced if the evidence is received in time for its effective use at trial."[122]

"Although civil claims brought under § 1983 for denial of Fourteenth Amendment due process rights based on a public officer's alleged concealing of exculpatory evidence may be considered in the context of *Brady*, due process civil claims are not always strictly limited by the criminal rules of the *Brady* framework."[123] "[A] police officer cannot avail himself of a qualified immunity defense if he . . . deliberately conceals exculpatory evidence, for such activity violates clearly established constitutional principles."[124] "[A] police officer violates clearly established constitutional rights when he conceals exculpatory evidence, including when he fails to disclose such evidence to the prosecuting attorney's office."[125]

The Court first assesses whether Plaintiff pleads specific facts that allow the Court to draw the reasonable inference that O'Neal violated Plaintiff's Fourteenth Amendment due process rights, as alleged, that would be sufficient to defeat a qualified immunity defense with equal specificity.[126] In Counts One and Two of his third amended complaint, Plaintiff alleges the individual Defendants, including O'Neal, "improperly suppressed and failed to timely disclose material exculpatory evidence, fabricated evidence, and engaged

---

[121] *Miller v. Dretke*, 431 F.3d 241, 245 (5th Cir. 2005) (citing *Brady*, 373 U.S. at 87).
[122] *Powell v. Quarterman*, 536 F.3d 325, 335 (5th Cir. 2008).
[123] *Rodriguez v. City of Houston*, No. CIV A H-06-2650, 2007 WL 1189639, at *3 (S.D. Tex. Apr. 19, 2007) (citing Mowbray v. Cameron Cnty., 274 F.3d 269, 278 n.5 (5th Cir. 2001)).
[124] *Geter v. Fortenberry*, 849 F.2d 1550, 1559 (5th Cir. 1988).
[125] *Williams v. Connick*, No. CIV.A. 12-1274, 2014 WL 172520, at *11 (E.D. La. Jan. 15, 2014); *Burge v. Par. of St. Tammany*, 187 F.3d 452, 480 n. 11 (5th Cir. 1999).
[126] *Id.*

in the affirmative concealment of such misconduct, thereby depriving Plaintiff of his right not to be deprived of liberty without due process of law."[127] Plaintiff alleges O'Neal "continu[ed] to hide"[128] and "concealed . . . critical exculpatory information  including scientific evidence that conclusively excluded Mr. Walter as the perpetrator of the crime . . . ."[129] Plaintiff alleges O'Neal performed serological testing of the crime scene evidence before Plaintiff's trial.[130] Plaintiff alleges that neither he nor his counsel received the serological testing the NOPD Crime Lab performed until the morning of trial, which made the evidence unusable.[131] Plaintiff further alleges that, after the Louisiana Fourth Circuit Court of Appeal remanded the case to the trial court to investigate Plaintiff's *Brady* claim based on the suppressed serological testing, O'Neal performed Mr. Walter's serological tests.[132] Plaintiff alleges "O'Neal reported that (a) the blood sample showed Mr. Walter was Blood Type B, and (b) the saliva sample showed Blood Type B secretor activity."[133] As a result, Plaintiff argues the evidence was favorable to the defense and material to guilt or punishment

Drawing all inferences in the light most favorable to Plaintiff and taking the allegations in the third amended complaint as true, the Court finds Plaintiff pleads specific facts to plausibly allege that Plaintiff's due process rights were violated by O'Neal's concealment, suppression, and/or withholding of exculpatory evidence prior to trial—that is, the serological report and corresponding evidence. "[A] police officer cannot avail himself of a qualified immunity defense if he . . . deliberately conceals exculpatory

---

[127] R. Doc. 85, p. 52.
[128] *Id.* at p. 4.
[129] *Id.* at p. 1.
[130] *Id.* at pp. 11-12, 13-14.
[131] *Id.* at p. 12.
[132] *Id.* at p. 13.
[133] *Id.*

evidence, for such activity violates clearly established constitutional principles."[134] Plaintiff plausibly alleges that, (1) O'Neal suppressed the serological evidence, (2) without the serological testing evidence, he was unable to use this evidence to assist his defense or obtain serological testing of his own, and (3) this failure prejudiced him at trial. Plaintiff has sufficiently pleaded that O'Neal suppressed material, exculpatory evidence in violation of his Fourteenth Amendment due process rights.

As explained above, "if the court remains 'unable to rule on the immunity defense without further clarification of the facts,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'"[135] "[F]ailure to limit discovery [is] tantamount to [a] denial of qualified immunity . . . . [Fifth Circuit] jurisprudence strongly favors limited discovery in a case like this where a plaintiff alleges facts to overcome the defense of qualified immunity."[136] Accordingly, the Court finds limited discovery is necessary for it to rule on O'Neal's qualified immunity defense. Courts must examine each official's actions independently to determine whether he or she is entitled to qualified immunity.[137] The Court finds carefully limited discovery regarding O'Neal's role in processing and testing the serological evidence, providing this evidence to OPDA, and providing this evidence to Plaintiff on the morning of trial, is necessary for the Court to rule on O'Neal's invocation of qualified immunity.

---

[134] *Geter v. Fortenberry*, 849 F.2d 1550, 1559 (5th Cir. 1988).

[135] *Backe*, 691 F.3d at 648 (quoting *Lion Boulos*, 834 F.2d at 507–08).

[136] *Asante-Chioke v. Dowdle*, 103 F.4th 1126 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1051 (2025) (citing *Carswell*, 54 F.4th at 312; *Lion Boulos*, 834 F.2d at 507–08).

[137] *Newman v. Guedry*, 703 F.3d 757, 762 (5th Cir. 2012) (citing *Meadours v. Ermel*, 483 F.3d 417, 421–22 (5th Cir. 2007)).

**IV.    Plaintiff's civil rights conspiracy claim will be dismissed.**

In Count IV of his third amended complaint, Plaintiff asserts a "civil rights conspiracy" claim against all the individual defendants, including Plaintiff.[138] As stated above, the Court will dismiss all individual capacity claims against O'Neal based on allegations that he testified falsely at the hearing or acted in conspiracy with others to do so based on absolute witness immunity. The claims in Count IV of the third amended complaint are based on the failure to disclose exculpatory evidence and not on false testimony.

Plaintiff's allegations in Count IV are that the individual defendants acted in concert to fail to disclose material exculpatory evidence, acted in concert to fabricate evidence, and acted in concert to conceal such misconduct.[139] The Plaintiff alleges that an unknown agent of the OPDA directed O'Neal to lie about the secretor status testing and its significance and asked him to "fudge his testimony."[140]

As the Defendant points out, the Plaintiff has provided no allegations about which agent of the OPDA made this statement. Nor has Plaintiff disclosed on what he bases this allegation.[141] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[142] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[143]

---

[138] R. Doc. 85 at p. 55.
[139] *Id.*
[140] *Id.* at p. 14.
[141] R. Doc. 94 at p. 5.
[142] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[143] *Id.*

The Court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[144] Indeed, "threadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[145]

The Court finds the Plaintiff has set forth only naked assertions devoid of factual enhancements in support of Count IV. Plaintiff's allegations with respect to Count IV are threadbare and conclusory. As a result, the Plaintiff has not stated a claim to relief that is plausible on its face.[146] This claim will be dismissed with prejudice.

## V.     Plaintiff has sufficiently pleaded a *Monell* claim against the City.

Plaintiff asserts a *Monell* claim against the City for fabrication, suppression, and concealment of evidence, and for the City's failure to train, discipline, or supervise as to these issues. The City Defendants argue that Plaintiff has "failed to plead plausible facts that satisfy the elements necessary to sustain" his *Monell* claim.[147] Defendants argue Plaintiff has failed to identify a policymaker at the City and has failed to plead the requisite amount of similar prior incidents to constitute a "pattern" and to put the policymaker on notice to establish deliberate indifference.[148]

In his third amended complaint, Plaintiff identifies three "policy, custom, and/or practice[s]" of the City, through NOPD:[149]

a.  Suppressing and failing to timely disclose material exculpatory evidence;

---

[144] *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[145] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[146] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[147] R. Doc. 90-1, pp. 17-19.
[148] *See id.* at pp. 21-24.
[149] Plaintiff also states the same causes of action against ODPA.

    b.  Fabricating evidence, including but not limited to false witness statements; and

    c.  Engaging in the affirmative concealment of such misconduct.[150]

Plaintiff alleges the City maintained policies, customs, and/or practices of "failing to adequately train, monitor, and supervise their [sic] employees regarding the constitutional duties to disclose exculpatory evidence and not to fabricate evidence," despite the obviousness that this lack of training would result in constitutional violations.[151] Plaintiff further alleges the City maintained a policy, custom, and/or practice of failing to supervise and discipline misconduct.[152] Plaintiff provides examples in his complaint as to NOPD's failure to train police officers on *Brady* requirements.[153] He points to testimony given by NOPD detectives that there was no policy on *Brady* in effect at NOPD, that they did not know what *Brady v. Maryland* or exculpatory evidence was, as well as other evidence pertaining to NOPD's failure to train.[154] Plaintiff asserts the same number of prior incidents of *Brady* violations relevant to the claims against OPDA as to the City.

Plaintiff provides at least eight cases which are examples of detectives, including O'Neal, providing false serological testimony[155] and other false testimony favorable to the prosecution's case at the time of Plaintiff's conviction that are sufficiently similar to this case. The Court finds that Plaintiff has sufficiently alleged facts to state a plausible claim that a City policymaker, through NOPD's superintendent, had knowledge of NOPD's custom or practice during the relevant time period of suppressing or concealing

---

[150] R. Doc. 85, p. 56.
[151] *Id.* at pp. 56-57.
[152] *Id.* at p. 57.
[153] *Id.* at p. 29.
[154] *Id.* at pp. 28-29.
[155] *Id.* at p. 47 (1983 trial of Brent Washington, in which O'Neal presented false serological testimony to the jury).

exculpatory evidence and/or fabricating unfavorable evidence, and failed to train, supervise, or discipline with respect to this custom, and that this custom was the moving force behind the constitutional violations in this case. The Court construes the allegations in Plaintiff's complaint as sufficient to put the policymaker on notice to constitute deliberate indifference. As recognized by other sections of this court, these allegations are "sufficient – though barely – to survive a motion to dismiss"[156] at this stage.

Accordingly;

## CONCLUSION

**IT IS ORDERED** that the Motion to Dismiss[157] is **GRANTED IN PART** and **DENIED IN PART**.

The Motion is **GRANTED** with respect to Plaintiff's individual capacity claims against Defendants John/Jane Does #1-20. These claims are **DISMISSED WITHOUT PREJUDICE.**

The Motion is **GRANTED** with respect to Plaintiff's individual capacity claim against O'Neal for perjury, false testimony, and conspiracy to commit perjury but only to the extent the claim is based on O'Neal's alleged perjury and/or any conspiracy with

---

[156] *See Moses v. City of New Orleans*, No. 24-1768, 2025 WL 816296, at *8 n.90 (E.D. La. Mar. 14, 2025) ("This Court is aware that there are only nine examples of evidence fabrication . . . listed in [plaintiff]'s amended complaint for the 20-year period from 1974 to 1994, and that this number may not itself be sufficient to establish a custom or practice as a matter of law. *Cf. Armstrong v. Ashley*, 60 F.4th 262, 277-78 (5th Cir. 2023) (upholding dismissal of *Monell* claim against a district attorney where plaintiff listed only nine cases over a 24-year period as examples of the district attorney's *Brady* violations). But because instances of the fabrication . . . of evidence . . . may not be as easily uncovered as instances of *Brady* violations by a district attorney, the Court accepts the lower number as a sufficiently pleaded plausible allegation of a custom or practice at this juncture to see if discovery may reveal a higher number of such instances more in line with prior decisions finding that a custom or practice was established. Whether [plaintiff]'s *Monell* claim . . . will survive a summary-judgment motion, then, is a decision for a different day.") (internal citations omitted). This case also involves allegations of *Brady* violations. The Court finds that, in this case, discovery may be beneficial to reveal more instances of "suppressing and failing to timely disclose material exculpatory evidence; [f]abricating evidence, including but not limited to false witness statements; and [e]ngaging in the affirmative concealment of such misconduct to establish a custom or practice" to establish a custom or practice and deliberate indifference.
[157] R. Doc. 90.

others to commit perjury and testify falsely. This claim is **DISMISSED WITH PREJUDICE.**

The Motion is **GRANTED** with respect to Plaintiff's individual capacity claim against O'Neal for civil rights conspiracy. This claim is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that, to uncover those facts necessary for the Court to rule on O'Neal's qualified immunity defense, on or before **August 11 2025** the parties shall complete limited discovery on the issue of O'Neal's entitlement to qualified immunity, specifically O'Neal's role in processing, testing, and providing Plaintiff's serological evidence to Plaintiff and the OPDA**.** On or before **August 18 2025,** Plaintiff may file a supplemental opposition to the City Defendants' motion to dismiss Plaintiff's claims that O'Neal violated his Fourteenth Amendment due process rights by suppressing, concealing, or withholding exculpatory evidence. The City Defendants may file a response on or before **August 25 2025.**

**IT IS FURTHER ORDERED** that the Motion is **DENIED** with respect to Plaintiff's *Monell* claim against the City.

**New Orleans, Louisiana, on this 17th day of June, 2025.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**